**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ROBERT L. WHITE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-2906** |
| **BURL CAIN, WARDEN** | **SECTION "R"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

**I.     Factual Background**

The petitioner, Robert LaTroy White ("White"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On August 15, 2007, White was charged by Bill of Information in St. Tammany Parish with one count of armed robbery.[3] He entered a plea of not guilty to the charge on September 24, 2007.[4]

The record reflects that, around 2:15 p.m. on April 30, 2007, at the Wal-Mart Store in Convington, Louisiana, Jason Pittman, a security guard, saw and followed White after seeing him

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. 3.

[3]St. Rec. Vol. 1 of 5, Bill of Information, 8/15/07.

[4]St. Rec. Vol. 1 of 5, Minute Entry, 9/24/07.

remove security devices from several ink-jet cartridges and place the cartridges in the waistband of his pants.[5] Pittman approached White after he walked past the last cash register. White denied having any merchandise. Pittman then attempted to physically detain White and a physical altercation ensued. White pulled a knife from his pocket and swiped at Pittman, telling him he would cut him. White successfully twice hit Pittman's hat with the knife causing Pittman to retreat. White exited the store. Pittman followed him out and saw him enter a vehicle. Pittman provided the make and license plate number of the vehicle to the police.

At the motion hearings held on October 3 and November 12, 2007, White indicated to the Trial Court that he desired to represent himself.[6] After thorough questioning at each hearing, the Trial Court granted his request and appointed attorney James G. Burke, III, to advise White in court.

With advisory counsel present, White also represented himself at the jury trial held on November 13 and 14, 2007, and he was found guilty as charged.[7] The state trial court subsequently denied White's counsel-filed motions for new trial and for post-verdict judgment of acquittal.[8] The Court sentenced White, who was assisted by counsel, on February 20, 2009, to serve fifty (50) years in prison without benefit of parole, probation or suspension of sentence.[9]

---

[5]The facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal. *State v. White*, No. 2009-KA-1766, 2010 WL 5323333, at *1 (La. App. 1st Cir. 2010); St. Rec. Vol. 4 of 5, 1st Cir. Opinion, 2009-KA-1766, p. 3, 2/12/10.

[6]St. Rec. Vol. 1 of 5, Minute Entry, 10/3/07; Minute Entry, 11/12/07; Hearing Transcript, 10/3/07.

[7]St. Rec. Vol. 1 of 5, Trial Minutes, 11/13/07; Trial Minutes, 11/14/07; Jury Verdict, 11/14/07.

[8]St. Rec. Vol. 1 of 5, Minute Entry, 4/1/08; Sentencing Minutes, 2/20/09; Motion for New Trial, 3/4/08; Memorandum in Support, 3/12/08; Motion for Post-Verdict Judgment of Acquittal, 11/12/08.

[9]St. Rec. Vol. 1 of 5, Sentencing Minutes, 2/20/09.

That same day, accompanied by counsel, White entered a plea of guilty to the State's multiple bill.[10] The Trial Court found him to be a second offender, vacated the sentence, and resentenced White to serve one-hundred years in prison at hard labor without benefit of parole, probation, or suspension of sentence.[11] The Court denied White's motion to reconsider the sentence.[12]

On direct appeal, White's appointed counsel asserted six assignments of error:[13] (1) the Trial Court erred in denying the motion for new trial and in charging the jury with jurisprudence in the instructions; (2) the Trial Court erred in not denying a mistrial due to the State's prejudicial discovery tactics; (3) the evidence was insufficient to support the verdict and the Trial Court erred in failing to quash the multiple bill and denying the motion for post-verdict judgment of acquittal; (4) the Trial Court erred in denying White's request for a continuance affecting his ability to prepare for trial; (5) the Trial Court erred in denying White's motions for mistrial based on prejudicial statements by witnesses in the jury's presence; and (6) the Trial Court erred by imposing an excessive sentence and denying White's motion to correct the sentence.

White filed a *pro se* supplemental brief asserting two errors:[14] (1) the Trial Court erred in failing to grant the motion to quash the bill of information; and (2) the Trial Court erred in denying the motion for post-verdict judgment of acquittal. The Louisiana First Circuit affirmed White's

---

[10]St. Rec. Vol. 1 of 5, Sentencing Minutes, 2/20/09; Multiple Bill, 6/24/08.

[11]St. Rec. Vol. 1 of 5, Sentencing Minutes, 2/20/09; Reasons for Judgment, 2/27/09.

[12]St. Rec. Vol. 1 of 5, Sentencing Minutes, 2/20/09; Reasons for Judgment, 2/27/09.

[13]St. Rec. Vol. 5 of 5, Appeal Brief, 2009-KA-1766, 10/23/09; Reply Brief, 2009-KA-1766, 12/3/09.

[14]St. Rec. Vol. 5 of 5, *Pro Se* Supplemental Brief, 2009-KA-1766, 10/22/09.

conviction, habitual offender adjudication, and sentence on February 12, 2010, finding no merit in any of the claims raised.[15]

On March 15, 2010, White's counsel filed a writ application in the Louisiana Supreme Court raising only three of the errors addressed on appeal:[16] (1) the Trial Court charged the jury with jurisprudence in the instructions; (2) the Trial Court erred in failing to declare a mistrial based on the State's prejudicial discovery tactics; (3) the sentence is excessive. On October 8, 2010, the Louisiana Supreme Court denied the writ application without stated reasons.[17]

## II.  State Post-Conviction History

On March 18, 2011, White submitted an application for post-conviction relief to the Trial Court asserting four grounds for relief:[18] (1) his Sixth and Fourteenth Amendment rights were violated when the Trial Court failed to determine whether his waiver of counsel was knowing and voluntary; (2) he was denied Due Process when, relying on his right to self-representation, he was not allowed the means to prepare his defense; (3) he was denied compulsory process at trial; and (4) the Trial Court failed to properly advise him of his rights under the habitual offender laws.

After receiving additional briefing from the State and White,[19] on July 29, 2011, the Trial Court denied the application finding no merit in the first three claims.[20] The Court, however, found

---

[15]*State v. White*, 2010 WL 5323333, at *1; St. Rec. Vol. 4 of 5, 1st Cir. Opinion, 2009-KA-1766, 2/12/10.

[16]St. Rec. Vol. 5 of 5, La. S. Ct. Writ Application, 10-K-582, 3/15/10.

[17]*State v. White*, 46 So.3d 1263 (La. 2010); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2010-K-0582, 10/8/10.

[18]St. Rec. Vol. 4 of 5, Uniform Application for Post-Conviction Relief, 3/25/11 (dated 3/18/11).

[19]St. Rec. Vol. 4 of 5, District Attorney's Answer, 5/20/11; Reply to State's Answer, 5/31/11.

[20]St. Rec. Vol. 4 of 5, Order and Reasons, 7/29/11.

4

merit in the fourth claim and ordered that the multiple offender sentence be vacated and the original sentence be reinstated. The Court reset the multiple bill arraignment and hearing.

The Louisiana First Circuit and the Louisiana Supreme Court denied without stated reasons White's related writ applications addressing the denial of relief on the first three appellate issues on November 9, 2011 and August 22, 2012, respectively.[21]

On January 20, 2012, the Trial Court held a hearing on the multiple bill at which White was assisted by counsel.[22] The Court again adjudicated White to be a fourth felony offender and sentenced him to serve life in prison with 99 years to be served without benefit of parole, probation, or suspension of sentence.[23]

White's sentence (hence, his conviction) became final 30 days later, on Wednesday, February 22, 2012, because he did not seek reconsideration or move for leave to appeal the re-sentencing. La. Code Crim. P. art. 914 (West 2001);[24] *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) ("a conviction becomes final when the time for seeking further direct review in the state court expires.") (quoting *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003)); *see also Burton v. Stewart*, 549 U.S. 147 (2007) (in a criminal case, judgment includes conviction and sentence, therefore the AEDPA "limitations period did not begin until both his conviction and sentence

---

[21]*State ex rel. White v. State*, 97 So.3d 350 (La. 2012); St. Rec. Vol. 4 of 5, La. S. Ct. Order, 2011-KH-2774, 8/22/12; 1st Cir. Order, 2011-KW-1646, 11/9/11; St. Rec. Vol. 5 of 5, La. S. Ct. Writ Application, 11-KH-2774, 12/15/11 (dated 12/8/11); 1st Cir. Writ Application, 2011-KW-1646, 9/1/11; 1st Cir. Writ Application (2), 2011-KW-1646, undated.

[22]St. Rec. Vol. 4 of 5, Hearing Transcript, 1/20/12; Reasons for Judgment, 1/26/12.

[23]*Id.*, at p. 10.

[24]A criminal defendant must move for leave to appeal within thirty (30) days of the order or judgment being appealed or of a ruling on a timely filed motion to reconsider a sentence. La. Code Crim. P. art. 914 (amended by La. Acts 2003, No. 949, § 1 to allow 30 days). Petitioner did not move for appeal under Article 914 which rendered the sentence final at the expiration of that period. *State v. Counterman*, 475 So.2d 336, 338 (La. 1985).


merit in the fourth claim and ordered that the multiple offender sentence be vacated and the original sentence be reinstated. The Court reset the multiple bill arraignment and hearing.

The Louisiana First Circuit and the Louisiana Supreme Court denied without stated reasons White's related writ applications addressing the denial of relief on the first three appellate issues on November 9, 2011 and August 22, 2012, respectively.[21]

On January 20, 2012, the Trial Court held a hearing on the multiple bill at which White was assisted by counsel.[22] The Court again adjudicated White to be a fourth felony offender and sentenced him to serve life in prison with 99 years to be served without benefit of parole, probation, or suspension of sentence.[23]

White's sentence (hence, his conviction) became final 30 days later, on Wednesday, February 22, 2012, because he did not seek reconsideration or move for leave to appeal the re-sentencing. La. Code Crim. P. art. 914 (West 2001);[24] *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) ("a conviction becomes final when the time for seeking further direct review in the state court expires.") (quoting *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003)); *see also Burton v. Stewart*, 549 U.S. 147 (2007) (in a criminal case, judgment includes conviction and sentence, therefore the AEDPA "limitations period did not begin until both his conviction and sentence

---

[21]*State ex rel. White v. State*, 97 So.3d 350 (La. 2012); St. Rec. Vol. 4 of 5, La. S. Ct. Order, 2011-KH-2774, 8/22/12; 1st Cir. Order, 2011-KW-1646, 11/9/11; St. Rec. Vol. 5 of 5, La. S. Ct. Writ Application, 11-KH-2774, 12/15/11 (dated 12/8/11); 1st Cir. Writ Application, 2011-KW-1646, 9/1/11; 1st Cir. Writ Application (2), 2011-KW-1646, undated.

[22]St. Rec. Vol. 4 of 5, Hearing Transcript, 1/20/12; Reasons for Judgment, 1/26/12.

[23]*Id.*, at p. 10.

[24]A criminal defendant must move for leave to appeal within thirty (30) days of the order or judgment being appealed or of a ruling on a timely filed motion to reconsider a sentence. La. Code Crim. P. art. 914 (amended by La. Acts 2003, No. 949, § 1 to allow 30 days). Petitioner did not move for appeal under Article 914 which rendered the sentence final at the expiration of that period. *State v. Counterman*, 475 So.2d 336, 338 (La. 1985).

'became final by the conclusion of direct review or the expiration of the time for seeking such review,'" citing 28 U.S.C. § 2244(d)(1)(A)).

In the meantime, on February 22, 2012, White acting *pro se* submitted a writ application to the Louisiana First Circuit.[25] The Court denied the application on May 8, 2012, finding that the issues were improperly raised and not subject to supervisory review.[26] The Louisiana Supreme Court also denied White's subsequent writ application on October 26, 2012, without stated reasons.[27]

In the meantime, on August 2, 2012, White filed a motion for the Trial Court to reconsider his sentence.[28] The Trial Court denied the motion without stated reasons on August 10, 2012.[29] The Louisiana First Circuit denied his related writ application without stated reasons on October 29, 2012, as did the Louisiana Supreme Court on April 26, 2013.[30]

## III. Federal Petition

On January 28, 2013, the clerk of this Court filed White's federal petition for habeas corpus relief in which he raised the following grounds for relief:[31] (1) the Trial Court failed to ascertain whether the defendant's waiver of his right to counsel was made knowingly and intelligently; (2)

---

[25]St. Rec. Vol. 5 of 5, 1st Cir. Writ Application, 2012-KW-0317, 2/22/12.

[26]St. Rec. Vol. 4 of 5, 1st Cir. Order, 2012-KW-0317, 5/8/12.

[27]*State v. White*, 99 So.3d 643 (La. 2012); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2012-KH-1337, 10/26/12; La. S. Ct. Writ Application, 12-KH-1337, 6/12/12 (dated 6/6/12).

[28]St. Rec. Vol. 4 of 5, Motion to Reconsider Sentence, 8/2/12.

[29]St. Rec. Vol. 4 of 5, Trial Court Order, 8/10/12.

[30]*State ex rel. White v. State*, 12 So.3d 841 (La. 2013); St. Rec. Vol. 4 of 5, 1st Cir. Order, 2012-KW-1427, 10/29/12; St. Rec. Vol. 5 of 5, La. S. Ct. Writ Application, 12-KH-2601, 12/5/12 (postal metered 11/30/12); 1st Cir. Writ Application, 2012-KW-1427, 8/24/12.

[31]Rec. Doc. No. 3.

6

he was denied Due Process where he lacked the means to prepare and present a defense while he exercised his right to self-representation; and (3) he was denied compulsory process at trial.

The State filed an answer and memorandum in opposition to White's petition conceding that the petition was timely filed and arguing that White failed to properly exhaust state court post-conviction remedies.[32] The State alternatively argued that the claims are otherwise without merit.

White replied to the State's memorandum in opposition re-urging that his petition was timely filed and his claims properly exhausted.[33]

## IV.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[34] applies to this petition, which is deemed filed in this court under the federal mailbox rule on November 21, 2012.[35] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies

---

[32]Rec. Doc. Nos. 13, 14.

[33]Rec. Doc. No. 15.

[34]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[35]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed White's federal habeas petition on January 28, 2013, when the filing fee was received after denial of pauper status. According to the official stamps from the Louisiana State Penitentiary, White submitted the petition to the prison officials on November 21, 2012, for forwarding to this federal court for filing. Rec. Doc. No. 3, p. 12. The pleadings were e-mailed that same day to the clerk of this Court. *Id*.

and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and the record confirms that White's petition is timely filed. The State, however, argues that White did not properly exhaust state court remedies. The State bases this defense on its resolve that White's 2011 post-conviction writ application to the Louisiana First Circuit was untimely filed and therefore not a procedurally proper presentation of his claims. The defense is not factually supported and must be rejected for that reason.

The record indicates that the writ in question, 2011-KW-1646, was filed by the clerk of the Louisiana First Circuit on September 1, 2011, more than 30 days after the date of the Trial Court's Order and Reasons being challenged. Although the Order and Reasons was signed by the Trial Court on July 29, 2011, it was not "issued" to White by the clerk of that Court until August 1, 2011.[36] As the State notes, this would have given White until August 31, 2011, to hand his pleading to prison officials for mailing to the Louisiana First Circuit.

White has provided the Court with a copy of his "Offender Funds Withdrawal Request" dated August 29, 2011, authorizing prison officials to withdraw the postage necessary to mail his writ application to the clerk of the Louisiana First Circuit.[37] Thus, the record supports the conclusion that White timely presented his writ application to prison officials and it was timely filed in the Louisiana First Circuit. The exhaustion defense is rejected. Therefore, the Court will address the substance of White's claims.

---

[36]St. Rec. Vol. 4 of 5, Clerk of Court's Letter, 8/1/11.

[37]Rec. Doc. No. 15-1, p. 3.

## V. **Standards of Review of the Merits**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2)

extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

**VI.     Waiver of Counsel and Self-Representation (Claim Nos. 1 and 2)**

White alleges that the Trial Court failed to adequately advise him of the disadvantages of self-representation in violation of *Faretta v. California*, 422 U.S. 806 (1975), and erroneously concluded that he knowingly and intelligently waived his right to counsel. As a tangent to or support for this assertion, he contends that he was at a disadvantage because he did not have

adequate supplies or access to legal materials to investigate, prepare, and present his defense. The State argues that the state courts' denial of relief on this issue was not contrary to federal law.

White raised these issues on post-conviction review to the Trial Court where they were found to be meritless. In denying relief, the Trial Court referenced the colloquy between the Court and White finding that it showed that the was knowing and intelligent. This was the last reasoned decision on the issue, because the Louisiana First Circuit and the Louisiana Supreme Court denied subsequent relief without stated reasons. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).

The validity of a waiver of the right to counsel or a *Faretta* request for self-representation is a mixed question of law and fact. *Brewer v. Williams*, 430 U.S. 387, 397, n. 4, 403-404 (1977) (waiver of Sixth Amendment right to assistance of counsel is not a question of historical fact, but rather requires application of constitutional principles to facts); *Miller v. Fenton*, 474 U.S. 104 (1985) (voluntariness of the waiver of a constitutional right is a mixed question of law and fact). The Court must therefore determine whether the denial of relief by the state courts was contrary to, or an unreasonable application of, *Faretta*.

"It is beyond dispute that '[t]he Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process.'" *Marshall v. Rodgers*, __ U.S. __, 133 S. Ct. 1446, 1449 (2013) (quoting *Iowa v. Tovar*, 541 U.S. 77, 80-81 (2004), citing *United States v. Cronic*, 466 U.S. 648, 653-654 (1984) and *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963)). A criminal defendant, however, also has the right to "proceed without counsel when he intelligently elects to do so." *Faretta*, 422 U.S. at 807; *Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013).

The Supreme Court has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). The state trial court need only be convinced that the defendant "knowingly and intelligently forgoes his right to counsel and that he is able and willing to abide by rules of procedure and courtroom protocol." *McKaskle v. Wiggins*, 465 U.S. 168, 173 (1984). The defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with his eyes open.'" *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).

In *Miller v. Thaler*, the United States Fifth Circuit Court of Appeals summarized the recommended considerations of a valid waiver of counsel:

> The defendant's waiver of his right to counsel must be unequivocal, and it should not be inferred by the court in the absence of a clear and knowing election. *Brown v. Wainwright*, 665 F.2d 607, 610 (5th Cir. 1982) (en banc). Before accepting a waiver of counsel, the court must consider and weigh:
>> the defendant's age and education ... and other background, experience, and conduct.... The court must ensure that the waiver is not the result of coercion or mistreatment of the defendant ... and must be satisfied that the accused understands the nature of the charges, the consequences of the proceedings, and the practical meaning of the right he is waiving.
>
> *McQueen v. Blackburn*, 755 F.2d 1174, 1177 (5th Cir. 1985).

*Miller*, 714 F.3d at 903.

In denying relief, the state trial court resolved that the *Faretta* factors were considered and established at the hearing held prior to acceptance of the waiver of counsel. The record supports this determination.

At his arraignment on September 24, 2007, White first moved to represent himself, and the Trial Court denied the motion.[38] At the preliminary hearing held on October 3, 2007, White again declared his desire to represent himself.[39] After having White sworn, the Court questioned him about his age, education, and literacy.[40] At the time he was 40 years old, with a "high school plus" education level. He indicated that he could read, write, and understand the English language. White also indicated that he had been in court as a defendant several times since 1986, and was familiar with court procedure.[41] White eloquently corrected counsel's recitation of the procedural history of the case that was pending before the Court.[42]

The Court continued the exchange with White to further discuss the impact of proceeding without counsel:[43]

> THE COURT: Now, do you understand if you represent yourself, the Court is - - has to advise you of your rights. You have the right to have an attorney, okay? You understand that?
>
> MR. WHITE: Yes.
>
> THE COURT: You have the right to have representation. Now the Court cannot make you - - if you do not - - if you come into court and say to the Court I do not have private counsel, I want to represent myself, then the Court can say, Well, Mr. White, the Court desires to appoint counsel to help you protect your rights, where you won't say something that might be detrimental to your case. And I have the right to appoint the public defender who the State says is, in essence, appointed to represent you.

---

[38]St. Rec. Vol. 1 of 5, Minute Entry, 9/24/07.

[39]St. Rec. Vol. 1 of 5, Hearing Transcript, p. 3, 10/3/07; Minute Entry, 10/3/07.

[40]*Id.*, at p. 4.

[41]*Id.*, at p. 5.

[42]*Id.*, at pp. 6-8.

[43]*Id.*, at pp. 8-11.

>  Now, in doing so, though, if you tell me - - which I understand today under oath you are telling me you don't want the public defender to represent you. So do you understand once you say that - - I'm going to have him sit there by you, but he's not going to be your mouthpiece. If there should be an objection made as to some testimony or something, he's not responsible for making them. He does not assume any responsibility insofar as representing you in these hearings and pleadings.
>  So I just want you to be aware of any pitfalls that you may fall into. You understand that?
>
>  MR. WHITE:  Yes, Your Honor.
>
>  THE COURT:  And I think you are fully cognizant of what's going on. You understand the procedures of court, since you tell me you have at least 20 years of experience of being in and out of court. So I think you do have that experience.
>  But I just want to be sure, for the purposes of this hearing today, that you understand that you - - this will go forward. There will be a ruling. And just because you don't have an attorney, that doesn't provide you any further Constitutional relief or buffer insofar as this hearing.
>
>  MR. WHITE:  Understood, Your Honor.
>
>  THE COURT:  And this is a preliminary hearing. This will be conducted; there will be questions asked; you will have the right to ask questions. I will caution you that you ask questions; you don't say what you want me to hear. If you want to testify later, then you can testify. You understand that?
>
>  MR. WHITE:  Yes, Your Honor.

After directing the assistant indigent defender, Jim Burke, to remain at White's side, the

Court further advised White as follows:[44]

>  THE COURT:  But, I'm not going to hold [Mr. Burke] responsible if [White] doesn't heed [his] advise. So don't come back later and say - -
>
>  MR. WHITE:  I won't, Your Honor.
>
>  THE COURT:  - - I didn't effectively represent myself because Mr. Burke didn't tell me. Because that ain't going to hold water. Do you understand that?
>
>  MR. WHITE:  I understand, Your Honor.

---

[44]*Id.*, pp. 11-12.

The Trial Court held another pretrial hearing on November 12, 2007, at which it again asked White if he intended to continue representing himself.[45] After the Court reiterated its warning about White's understanding of the charges and "the magnitude and responsibilities therewith," White again indicated his intent to represent himself.[46]

Under the circumstances of White's case, including his insistence upon self-representation and expressed understanding of the legal process, the *Faretta* factors were met. This was confirmed through trial by his ability to participate in argument and questioning and to prepare his own pleadings, which included appropriate references to cases and the law.

In that regard, there also is no basis for relief in White's assertion that he was unable to prepare his defense due to his limited access to supplies and law books at the prison. The United States Supreme Court does not recognize a constitutional deprivation arising from such a claim.

> [I]t is clear that *Faretta* does not, as § 2254(d)(1) requires, 'clearly establis[h]' the law library access right. In fact, *Faretta* says nothing about any specific legal aid that the State owes a pro se criminal defendant.

*Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005). Thus, federal law as determined by the United States Supreme Court does not recognize a right like that which White seeks to assert.

For the foregoing reasons, White has failed to establish that the state courts' denial of relief on these issues was contrary to, or an unreasonable application of, *Faretta* or its progeny. He is not entitled to relief on this claim.

---

[45]St. Rec. Vol. 1 of 5, Hearing Transcript, pp. 2-3, 11/2/07; Minute Entry, 11/12/07.

[46]*Id.*, p. 3.

## VII.   Right to Compulsory Process at Trial

White claims that he was denied a fair and impartial trial because, while representing himself, he was not provided with an investigator to look for witnesses and obtain addresses for service of subpoenas.  He contends that this violated his right to obtain and contact witnesses who could have attested that he did not have a dangerous weapon and that he had two cell phones in his waistband.  The State contends that the denial of relief was not contrary to or an unreasonable application of federal law, although none was cited in this portion of its memorandum.

The state trial court denied relief on this issue on post-conviction review finding that White had been given ample opportunity to issue subpoenas and failed to provide proper addresses for the prospective witnesses who were not served.  This was the last reasoned opinion on the issue.  *Ylst*.

Whether a defendant's right to confrontation were violated is a mixed question of law and fact.  *Brown v. Epps*, 686 F.3d 281, 285 (5th Cir. 2012).  The Court must therefore consider whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law.

"Because these [Sixth Amendment] rights are basic to our adversary system of criminal justice, they are part of the 'due process of law' that is guaranteed by the Fourteenth Amendment to defendants in the criminal courts of the States."  *Faretta*, 422 U.S. at 818.  The Supreme Court further recognized that the Sixth Amendment "grants to the accused personally the right to make his defense.  It is the accused, not counsel, who must be informed of the nature and cause of the accusation, who must be confronted with the witnesses against him, and who must be accorded compulsory process for obtaining witnesses in his favor." (internal quotations omitted) *Faretta*, 422 U.S. at 819.

However, a petitioner has no basis to claim that his rights were violated simply because he failed to ensure that subpoenas were properly served. *See Faretta*, 422 U.S. at 834 n.46 ("[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'"). Furthermore, "more than the mere absence of testimony is necessary to establish a violation of the right [to compulsory process]." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). The Supreme Court, however, has not fully resolved the guarantees afforded by the Compulsory Process Clause:

> Because the applicability of the Sixth Amendment to this type of case is unsettled, and because our Fourteenth Amendment precedents addressing the fundamental fairness of trials establish a clear framework for review, we adopt a due process analysis for purposes of this case. Although we conclude that compulsory process provides no *greater* protections in this area than those afforded by due process, we need not decide today whether and how the guarantees of the Compulsory Process Clause differ from those of the Fourteenth Amendment.

*Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987) (emphasis in original).

Thus, the Sixth Amendment right is not absolute. *United States v. Gonzales*, 79 F.3d 413, 424 (5th Cir. 1996). "[T]he Sixth Amendment does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses: it guarantees him 'compulsory process for obtaining *witnesses in his favor*.'" (emphasis in original) *Valenzuela-Bernal*, 458 U.S. at 867 (quoting U.S. Const. amend. VI). "A violation of this clause of the Sixth Amendment occurs when a defendant is arbitrarily deprived of "testimony [that] would have been *relevant* and *material*, and . . . *vital* to the defense.'" (emphasis in original) *Id.*, at 867 (quoting *Washington v. Texas*, 388 U.S. 14, 16 (1967)).

Therefore, to establish a Confrontation Clause violation, the defendant must "at least make some plausible showing of how [the witness's] testimony would have been both material and

17

favorable to his defense." *Id.*; *United States v. Redd*, 355 F.3d 866, 878 (5th Cir. 2003); *Janecka v. Cockrell*, 301 F.3d 316, 326 (5th Cir. 2002). Thus, "[w]hen requesting a court to subpoena a witness, a defendant . . . has the duty to demonstrate the necessity of the witness's testimony." *Gonzales*, 79 F.3d at 424.

Based on the extensive discussions with the Trial Court on November 12, 2007,[47] White was able to successfully subpoena several trial witnesses, including the victim, Jason Pittman, Officer Carl Humphries, Officer Jack Tanner, and his former appointed counsel in another case, Kevin Linder.[48] He further indicated his desire for assistance in locating and subpoenaing four other people, Patricia Cain, Tyrell Cyprian, Justin Nail and Dalton Doyle.[49] The Court repeatedly reminded White that it was his obligation to get his subpoenas issued, another "pitfall" in his decision to represent himself. The Court nevertheless excused the prosecutor from the room and took statements from White, assisted by Mr. Burke, as to the relevance of the four potential witnesses.[50]

White indicated that Cain was his former girlfriend and might have been "riding" with him that day although he was not certain. He suggested that, if she was, she might have relevant factual information. He had no address and apparently was not sure where she was currently residing. The Court declined to have the clerk issue a subpoena without an address on the day or eve of trial.

---

[47]Trial was scheduled to begin on November 12, 2007 and was continued to November 13, 2007, to address the many late filed motions made by White.

[48]St. Rec. Vol. 1 of 5, Hearing Transcript, p. 27, 11/27/07; St. Rec. Vol. 2 of 5, Hearing Transcript (continued), pp. 61, 62-63, 11/27/07.

[49]St. Rec. Vol. 1 of 5, Hearing Transcript, p. 27, 11/27/07; St. Rec. Vol. 2 of 5, Hearing Transcript (continued), pp. 45-56, 11/27/07.

[50]St. Rec. Vol. 2 of 5, Hearing Transcript (continued), pp. 61-72, 11/27/07.

White described Cyprian as an acquaintance from Hammond whom he had known off and on for over a year. He recalled that Cyprian was with him at the Wal-mart and might have seen the events alleged by Pittman. White knew only that Cyprian lived in Hammond with his mother. White thought he might know the street name but not the house number. Again, the Court declined to have the clerk issue a subpoena without a full address on the day or eve of trial.

Nail was identified as the security guard/victim in another unrelated armed robbery case brought against White in 2005. White and the prosecutor confirmed that Nail moved out of state prior to the resolution of that case. The court resolved that Nail had no connection with the case.

White identified Dalton Doyle as the manager of the Wal-mart where the robbery occurred. He issued a subpoena to Doyle at that Wal-mart requesting that he appear and bring information and records related to the robbery. The subpoena was apparently not executed, because Doyle was not an employee at that store. The prosecutor confirmed for the Court that Doyle was the manager of the Wal-mart in Slidell, Louisiana and had never been employed at the Covington location. The Court resolved that no subpoena need be issued to Doyle since he had no connection to the case.

As determined by the state courts, the record confirms that White was not unconstitutionally denied his right to subpoena witnesses. On the contrary, the Trial Court made great efforts to determine the need for the witnesses and their relevance to White's case. His confrontation rights were protected and considered by the Trial Court. However, other than White's general reference that Cain and Cyprian might have known or seen something assuming they were even present, White failed to establish the materiality of the potential testimony or that the witnesses could offer anything favorable to his defense. White still has not produced anything, such as an affidavit or other proof,

19

other than his own conjecture and speculation, as to what any of these persons might have testified that would have been beneficial to his case.

White failed to establish his entitlement to have these witnesses subpoenaed or that his rights under the Confrontation Clause were violated. The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of, federal law. He is not entitled to relief on this issue.

**VIII.   Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Robert White's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[51]

New Orleans, Louisiana, this 13th day of March, 2014.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[51] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.